❏ Original     ❏ CLERK'S OFFICE
A TRUE COPY
Jul 01, 2025
s/JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **25-M-421 (SCD)**
The person of Dallas D. SMITH, as further )
described in Attachment A3 )
)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A3.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   7-15-25   *(not to exceed 14 days)*

x   in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Stephen C. Dries _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   7-1-25. 1:10 pm _____     *(signature)* Stephen C. Dries
_____
*Judge's signature*

City and state:   Milwaukee, WI _____     Honorable Stephen C. Dries, U.S. Magistrate Judge
_____
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A3

### PERSON TO BE SEARCHED

The person of Dallas D. SMITH.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

All records, information, and items relating to violations of 21 U.S.C. §§ 841(a)(1), 843 and 846, between January 1, 2025, to present including:

a) Evidence of the crime described above

b) Paraphernalia and tools associated with drug trafficking, to include plastic bags, scales, duffel bags, and money counters;

c) Preparatory steps taken in furtherance of that crime;

d) Evidence of the existence, scope, or overt acts in furtherance of a conspiracy

e) Evidence of motive, intent, or knowledge of the crime described above;

f) Evidence of the location, whereabouts, and patterns of travel of Dallas D. SMITH;

g) Evidence about the appearance, clothing, and identity of Dallas D. SMITH;

h) All bank records, checks, credit card bills, account information, and other financial records;

i) Financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

j) Lists of drug customers and related identifying information;

k) Types, amounts, and prices of drugs trafficked, as well as dated, places, and amounts of specific transactions;

l) Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

m) Indicia of residency;

n) Safes, vaults, or lock boxes used to store proceeds or records from these crimes;

o) U.S. Currency;

p) Evidence indicating how and when electronic devices were accessed or used, to determine the chronological and geographic context of access, use, and events relating to the crime under investigation; and

q) Cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/ or data.

r) Garage door openers—to be linked to the other potential stash-garages listed in the affidavit. Note: law enforcement is authorized to manipulate any recovered garage door openers to determine what location the garage door openers access. However, law enforcement will seek an additional warrant before searching any premises not covered by this application.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

During the execution of the search of the locations or person described in Attachments law enforcement personnel are authorized (1) to press the fingers (including thumbs) of Dallas D SMITH to the fingerprint sensor ("Touch ID") and (2) to present the face of Dallas D. SMITH to the facial recognition sensor, such as a camera, ("Face ID") of the device found at the Target Location for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

Note: The government will attempt to retrieve and copy all data from computers found at the location to be searched without physically removing said computers. If occupants of the premises are unwilling to cooperate with the agent(s) regarding the operation of an on-site computer system(s), and/or it appears that there is/are data security devices involved, or the computer system utilizes unusual or proprietary equipment, the computer system may be seized, along with the proprietary equipment. If the agent determines that the volume of material found on the premises is voluminous in size, and/or for any technical reason the agent(s) on the scene cannot search for or image/copy the information found on the premises, the computer system(s) and media may be seized.



CLERK'S OFFICE
A TRUE COPY
Jul 01, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**The person of Dallas D. SMITH, as further<br>described in Attachment A3** | )<br>)<br>)<br>)<br>)    Case No.   **25-M-421 (SCD)**<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A3.

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 846; & 843(b) | Possession with the intent to distribute controlled substances; Conspiracy to possess with the intent to distribute controlled substances; and Illegal use of a communication facility. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MADDIE MORGAN (Affiliate)   Digitally signed by MADDIE MORGAN (Affiliate)<br>Date: 2025.07.01 12:04:44 -05'00'

*Applicant's signature*

Maddie M. Morgan, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:   **7-1-25**

*Judge's signature*

City and state:   Milwaukee, WI      Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Maddie M. Morgan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, a residential dwelling, a vehicle, and a person, and the extraction of evidence from those locations and that person as described in Attachment B.

2.     I am an Investigator with the Ozaukee County Sheriff's Office and have been a law enforcement officer since December of 2020. I have been an Investigator for six months and have been assigned to conduct narcotics investigations throughout that time. I am also a Task Force Officer with the Drug Enforcement Administration (DEA) and have been since March of 2025. I am currently assigned to the DEA Milwaukee District Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.     As part of my duties as a DEA Task Force Officer, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

4.     I have participated in narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

a) I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b) I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c) I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

d) I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations. I am familiar with the language utilized over the telephone or other communication applications to discuss drug trafficking, and know that the language is often limited, guarded, and coded. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity.

e) I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f) I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g) I know that drug traffickers commonly have in their possession, and firearms, ammunition, and records or receipts pertaining to such at their residences and other locations where they exercise dominion and control, like storage building near their residence and vehicles;

h) I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

i) I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5.　　I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

6.　　The facts in this affidavit come my personal participation in this investigation, and my review of: (a) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (b) information obtained from cooperating witnesses, confidential sources, and/or defendants, whose reliability is established herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.　　Throughout this affidavit, reference will be made to case agents.　Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

8.　　This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gained from interviews with cooperating witnesses, and informants, whose reliability

is established separately herein.  Because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each fact known to me concerning this investigation.  I have set forth only the facts I believe are essential to establish the necessary foundation for the requested search warrants.

9.      Based on the facts set forth in this affidavit, there is probable cause to believe that the crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b), have been committed by Dallas D. SMITH (DOB: XX/XX/1988) and other known and unknown individuals.

10.      Further, there is probable cause to search the locations described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROPERTIES AND PERSON TO BE SEARCHED

## ATTACHMENT As

11.      **A1:** 5281/5283 South 13th Street, Milwaukee, Wisconsin to include its storage shield (**Target Location**).  The address is a two-story residence with white brick siding on the lower half of the east side (front) of the residence, white siding on the upper half of the east side (front) of the residence and a black shingled roof.  The numbers 5281 appear affixed in black to the north of the northern front door while the numbers 5283 appear affixed in black to the south of the southern front door on the east side of the residence.  There is an awning above both of the front doors on the east side with a roof with black shingles.  There are two large picture windows on either side of the front doors, both with three panes and a white trim.  The address is a duplex, with 5281 is on the North side of the residence and 5283 is on the South side of the residence.

5283 and 5281 South 13th Street, Milwaukee, Wisconsin is utilized by Dallas D. Smith. The residence also has a white shed with black trim and black shingled roof in the backyard in the northwest corner of the yard.

12.	**A2:** 2014 silver Nissan Altima with Wisconsin license plate 77159DS and vehicle identification number (VIN) 1N4AL3AP4EC136734 (**Subject Vehicle**).

13.	**A3:** the person of Dallas D. SMITH.

## PROBABLE CAUSE

14.	Since April 2025, the DEA has been conducting an investigation involving Dallas D. SMITH (DOB: XX/XX/1988) and other individuals who are believed to be involved in the distribution of methamphetamine and heroin in the Milwaukee area.

**A. Background**

15.	In January 2025, Investigator Zachary Wilkens of the Oshkosh Police Department began an investigation into Willie EPPS (DOB: XX/XX/1987). Eventually Investigator Wilkens obtained a court-authorized GPS on EPPS' vehicle and monitored his activity from January 15, 2025 until January 27, 2025.

16.	On January 27, 2025, EPPS traveled to Milwaukee and parked near 5323 South 13th Street, Milwaukee, Wisconsin for approximately five minutes. Later in the same day, EPPS was stopped in Fond Du Lac County and taken into custody. EPPS had almost 100 grams of methamphetamine and a small amount of fentanyl on his person when he was taken into custody. The same day, the Oshkosh Police Department executed a search warrant at EPPS' residence at 929 Wisconsin Street, Oshkosh, Wisconsin and located user amounts of methamphetamine, fentanyl, and cocaine.

17.     On January 28, 2025, Investigator Wilkens interviewed EPPS at the Fond Du Lac County Jail.  During a *Mirandized* interview, EPPS admitted that he bought drugs from a male in Milwaukee that had the Facebook name "Paperchasin Drew."  EPPS stated the day he got pulled over, he was on his way back home from Milwaukee where he had met with SMITH.

18.     EPPS' adult criminal history includes convictions for resisting/obstructing an officer (three counts), disorderly conduct (domestic abuse—two counts, non-domestic abuse one count), felony-bail jumping (two counts), OWI with minor passenger, OWI (2nd), OAR (two counts), Interlock Device Tampering/Failure to install/Violate Court Order, Disorderly Conduct (repeater), OWI (3rd), and OWI/PAC (4th).  I believe EPPS is credible and that his information is reliable.  EPPS' statement was made against his penal interest and was not provided in hope of receiving any benefit (monetary compensation or judicial consideration). Additionally, some of EPPS' information was later corroborated through independent means.  For example, EPPS provided the Facebook name of his Milwaukee methamphetamine supplier, and it was the same Facebook name provided by a separate cooperating subject (detailed below).

19.     On April 14, 2025, Ozaukee County Sheriff's Office Deputy Michael Zilke conducted a traffic stop on a grey Saturn sedan for failing to stop at a stop sign in Saukville, Wisconsin.  The driver, Jessob DIEDERICH, was taken into custody after being found in possession of 168.2 grams of suspected methamphetamine.  Deputy Zilke conducted a *Mirandized* interview with DIEDERICH, who admitted to purchasing the methamphetamine in Milwaukee from a black male with the Facebook name of "Paperchasin Drew."  DIEDERICH stated the individual lives near South 13th Street and Layton Avenue in Milwaukee, Wisconsin. DIEDERICH was not aware of the exact address but described the house location as two houses towards Layton Avenue from an apartment complex that is across the street from a Packer themed

bar. DIEDERICH admitted that a few months ago, he purchased 17-18 pounds of methamphetamine from the same individual in Milwaukee. On April 14, 2025, Deputy Zilke notified Task Force Officer (TFO) Maddie Morgan of the traffic stop and the information DIEDERICH shared during his interview.

20.     DIEDERICH's adult criminal history includes convictions for disorderly conduct (domestic abuse—four counts), Possession of THC (two counts), Theft, Battery, Disorderly Conduct (two counts), resisting/obstructing an officer (two counts), possession of narcotic drugs, felony-bail jumping (three counts), criminal trespass to dwelling, and manufacture/deliver amphetamine (10-50g)(PTAC). I believe DIEDERICH is credible and that his information is reliable. DIEDERICH's statement was made against his penal interest and was not provided in hope of receiving any benefit (monetary compensation or judicial consideration). Additionally, some of DIEDERICH's information was later corroborated through independent means. For example, DIEDERICH provided the Facebook name of his methamphetamine supplier, and it was the same Facebook name provided by EPPS. Further, case agents were able to review text message content from DIEDERICH's phone.

21.     Case agents reviewed public viewable Facebook page for "Paperchasin Drew" (URL https://www.facebook.com/paperchasin.drew) user ID 100038640160235 and was able to locate a video on that page that had a shed in the background. Case agents located the residence, 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location),** with the exact shed depicted in that video and matching the description provided by DIEDERICH of his drug supplier's residence.

22.     Case agents reviewed Wisconsin Department of Corrections (WIDOC) records for SMITH which had a listed address of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**).  SMITH's address was last updated with WIDOC on or about August 1, 2022.

23.     Case agents also observed that 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) is approximately 150 feet from where Willie EPPS' GPS location data showed his vehicle was on the day that EPPS was taken into custody.

24.     In December 2018, SMITH was arrested by Milwaukee Police Department for Possession of Heroin with Intent, Possession of Narcotic Drugs, and Maintain Drug Trafficking Place. SMITH is currently on supervision through the WIDOC for Felon in Possession of a Firearm and Possession of Narcotic Drugs.  Case agents review records from WIDOC which indicated that SMITH is currently in absconder status from his supervision.

**B.  Surveillance**

25.     On April 15, 2025, case agents conducted surveillance at SMITH'S residence at 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**).

26.     During the surveillance, case agents observed a silver Nissan Altima (**Subject Vehicle**) pull into the driveway of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). The silver Nissan was bearing Wisconsin license plate 77159DS (**Subject Vehicle).** Wisconsin Department of Transportation (WIDOT) records show that the **Subject Vehicle** is registered to Robin DONALD (XX/XX1969) and has a VIN of 1N4AL3AP4EC136734.

27.     Case agents reviewed reports from Oak Creek Police Department from March 2024.  Report indicated that police responded to a domestic violence incident and spoke with DONALD.  During the incident DONALD identified herself as SMITH'S mother. Further, the

reports indicated DONALD resides at 5281 South 13th Street, Milwaukee, Wisconsin (**Target Location**).

### C. Follow Up Interview DIEDERICH

28.     On April 17, 2025, case agents met with DIEDERICH at the Ozaukee County Jail. DIEDERICH consented to going through his cell phone and consented to a forensic download of his cell phone.  DIEDERICH provided two phone numbers for Dallas SMITH, 262-389-1213 and 262-402-2859, saved in his phone as "Plugs" and "Chad's Plug," respectively.  DIEDERICH showed case agents a conversation between DIEDERICH and SMITH using 262-389-1213 from April 13, 2025, a few hours prior to DIEDERICH getting stopped by Ozaukee County Sheriff's Office. In these text messages, SMITH stated, "For 900$ I'll give u 5oz For the demo I'll give u 2oz Yea all together 7oz" to which DIEDERICH responded, "I don't need any hard tho maybe some down idk what I'd do with the ball of hard."  Based on training and experience, I know that "hard" is a common street name for crack cocaine.  I also know that "down" refers to a "downer" drug such as fentanyl, heroin, or benzodiazepines.  DIEDERICH was arrested in possession of approximately 168 grams of methamphetamine, which is roughly 5.9 ounces.  I believe this amount to be generally consistent with the quantities being discussed between DIEDERICH and SMITH in the above-described text exchange.

29.     DIEDERICH stated to case agents that he has been purchasing various narcotics from SMITH for the past few months.  DIEDERICH stated he first spoke with SMITH via his Facebook page, "Paperchasin Drew." He had added him as a friend after his associate "Chad" was taken into custody for narcotic charges.  DIEDERICH advised "Chad" had been purchasing methamphetamine from SMITH originally and he would occasionally go with "Chad" to Milwaukee to purchase it.  After "Chad" was taken into custody, he went directly to SMITH via

his Facebook page. SMITH provided DIEDERICH his cell phone number via Facebook messenger.

30.     DIEDERICH stated he believed SMITH used Facebook messenger to communicate with other people purchasing narcotics from him. He was shown a photograph of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location)** and confirmed that was the residence where SMITH resided. He was shown a photograph of SMITH and confirmed that he was the individual DIEDERICH had been purchasing narcotics from and that SMITH was the individual with the Facebook name "Paperchasin Drew." DIEDERICH informed case agents on a few different occasions that he had been picked up by SMITH in the Milwaukee area in a silver sedan. He described it as having red rims and dark tint. DIEDERICH was also shown a picture of **Subject Vehicle** and confirmed that was the vehicle that SMITH was driving when he picked him up in Milwaukee. DIEDERICH did not know of any other vehicles that SMITH drove.

**D.     Court Warrants**

31.     On April 25, 2025, the Honorable Stephen Dries Magistrate Judge for the Eastern District of Wisconsin granted a search warrant for prospective location data related to SMITH's phone. From April 28, 2025 until May 24, 2025 case agents monitored the general location of SMITH's device, which has assisted in conducting surveillance and furthering the investigation because it has allowed case agents to establish locations that SMITH frequents. It has also given insight into individuals that SMITH is involved with in related to drug trafficking (customers, co-conspirators, sources of supply, etc.) On the same date, the Honorable Stephen Dries, Magistrate Judge for the Eastern District of Wisconsin, granted a court order authorizing the installation and use of a pen register and trap and trace device or process ("pen-trap device") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each

communication to or from Dallas SMITH'S cell phone number.  From April 28, 2025 until May 24, 2025, case agents monitored incoming and outgoing communications to the phone number and have established persons that SMITH regularly contacts.

### E.  Additional Surveillance

32.     On May 1, 2025, case agents utilized Flock Safety to conduct a check on the silver Nissan Altima bearing Wisconsin license plate 77159DS (**Subject Vehicle**), believed to be frequently driven by SMITH.  Case agents observed that the **Subject Vehicle** hit on a Flock camera at Fond Du Lac Road and Capitol Drive in Milwaukee, Wisconsin at 6:48PM.  Case agents monitored the court authorized prospective location data of SMITH's cell phone and observed that it was down the block from that location at 6:50PM on the same date.

33.     On May 2, 2025, case agents observed that the **Subject Vehicle** hit on a Flock camera at Bluemound Road and Plaza Court in the City of Brookfield at 2:06PM.  The court authorized prospective location data of SMITH'S phone showed a location a few blocks from the Flock camera at 2:05PM on the same date. Based on my training and experience, the information from May 1, 2025 and May 2, 2025 regarding the Flock camera and SMITH's phone would be consistent with SMITH using his vehicle and his phone at the same location.

34.     On May 7, 2025, case agents monitoring the court authorized electronic surveillance on SMITH'S cellular number observed the telephone travel from Milwaukee, Wisconsin to Watertown, Wisconsin. The telephone was observed to be in the Milwaukee area at approximately 5:36PM, but by 6:36PM, it was observed in the Watertown area. Case agents continued to monitor the telephone and did not observe it to leave the Watertown area until approximately 12:07PM on May 8, 2025.

35.     The telephone was observed to travel south of Watertown moving towards Johnson Creek. Case agents obtained two PINGS (12:22PM and 12:37PM) that placed SMITH's telephone near the intersection of Highway 26 and Interstate 94 in Johnson Creek, which is in close proximity to several gas stations, restaurants, and the Johnson Creek Premium Outlet Center. Case agents observed another PING on SMITH's telephone at 1:07PM that placed the phone back in the Watertown area.

36.     On May 8, 2025, case agents from Milwaukee DEA Group 61 traveled to Watertown to begin searching for the **Subject Vehicle.** At approximately 2:50PM, case agents located the **Subject Vehicle** in the parking lot of the Watertown East Apartments at 1153 South Boughton Street, Watertown, Wisconsin. The **Subject Vehicle** was parked on the East side of Building 16, nearest to Apartment F. Building 16 appeared to have six units in the building and the units were marked with the letters A through F above the doors. Unit A is on the west end of the building and Unit F is on the east end of the building. Case agents established surveillance in the area but the **Subject Vehicle** did not move. Throughout the time that the case agents were on surveillance SMITH'S electronic surveillance did not move and was in the general area that included 1153 South Boughton Street. Based on my training and experience, this would be consistent with the **Subject Vehicle** (which did not move) and the telephone (which appeared to not move) likely remaining in the same area, meaning that Smith likely also remained in the same area.

37.     On May 15, 2025, at approximately 10:20AM, case agents established surveillance in the area of SMITH'S residence, 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). Case agents observed the **Target Vehicle** parked in the driveway to the south of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). Additional case agents from

Milwaukee DEA Group 61 established surveillance in the area. At approximately 10:28AM, case agents observed a black Audi sedan bearing Wisconsin license plate AYP1070 (Audi) back into the driveway at 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). Case agents observed SMITH exit the 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). approach the Audi for a brief moment and then return to the 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). SMITH then exited the 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) and re-approached the Audi for another brief moment before going back inside of the 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). The Audi then exited the driveway. Based on my training, experience, and my investigation into SMITH, this short contact between Smith and the Audi was consistent with a drug transaction.

38.     Also on May 15, 2025 at approximately 10:42AM, an unidentified (UI) black female exited the door of 5281 South 13th Street, Milwaukee, Wisconsin (**Target Location**) (the north side) of the front of the residence and walked directly into 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) of the south door of the front of the residence, leading case agents to believe that the occupants of the duplex live on both sides of the unit. Case agents observed an UI black male with his hood up exit 5281 South 13th Street, Milwaukee, Wisconsin (**Target Location**) following the observation of the female. The UI black male entered a black GMC SUV bearing Wisconsin registration AWY8241 (GMC) with the UI black female. The UI black female appeared to be pregnant. The GMC left the driveway and went north on South 13th Street.

39.     On May 15, 2025 at approximately 2:37PM, the Audi returned and backed into the driveway of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). Case agents observed SMITH exit 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**),

approach the Audi, and go back inside 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**).  SMITH then returned to the Audi, the driver's door opened for a moment, and then the Audi left.  SMITH returned back into 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**).  Based on my training, experience, and investigation into SMITH, this short contact was against consistent with a drug transaction.

40.     Case agents followed the Audi south on 13th Street.  Case agents briefly lost visual of the Audi before locating it backed into a parking spot at the McDonald's at 6262 South 13th Street, on the northeast corner of 13th Street/W College Avenue.  Case agents established surveillance in the area.  At approximately 2:47PM, a silver Chevrolet Equinox pulled into the parking lot of the McDonald's and parked closer to West College Avenue.  The silver Chevrolet Equinox had plastic dealer plates affixed to both the front and rear of the Equinox.  There was a piece of white paper in the rear window, but case agents were unable to read it.  An unidentified black male exited the Equinox and walked over to the Audi.  The male entered the Audi on the passenger side for a brief second.  He then exited and walked back to the Equinox, pulled out of the parking lot and drove north on South 13th Street.  An unknown black female exited the Audi and appeared to walk inside of the McDonald's.  A few minutes later, she returned to the Audi and drove out of the parking lot north on South 13th Street.  Case agents followed the Audi and Equinox northbound on South 13th Street.  Case agents observed the Equinox parked in the driveway at 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**).  The Audi sedan continued northbound on South 13th Street and case agents lost visual of it.  Case agents re-established surveillance in the area of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**), SMITH'S residence.  At approximately 3:03PM, the GMC parked on the street outside of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**).  The pregnant female that

was observed earlier exited the GMC as well as the UI black male. The male entered the 5281 South 13th Street, Milwaukee, Wisconsin (**Target Location**), and the female entered the Equinox with the UI black male that was driving it previously. The Equinox exited the driveway and went north on South 13th Street. Case agents attempted to follow the Equinox but lost visual on Interstate 43 Northbound north of the Marquette Interchange.

### F. Additional Drug Arrest

41.     Case agents determined that Rachel A. KRAEMER (XX/XX/1987) was one of SMITH'S frequent contacts. Case agents used other law enforcement records and the Wisconsin Department of Transportation (WIDOT) records to determine that KRAEMER operates a 2015 Ford Escape bearing Wisconsin license plate AGL5935 (Escape).

42.     On May 20, 2025, case agents, utilizing Flock Safety, observed that KRAEMER'S Escape had hit on a Flock camera at Martin Luther King Drive and West North Avenue in the City of Milwaukee. Case agents know that KRAEMER resides in New Holstein, Wisconsin and hits on Flock cameras approximately once a week in the Milwaukee area. At approximately 2:47PM on the same date, the Escape hit on a Flock camera in the Village of Saukville, Wisconsin in Ozaukee County. Saukville Police Department Officer Brandin Depies conducted a traffic stop on the Escape in his jurisdiction for a traffic violation. Officer Depies identified the driver as Rachel KRAEMER via Wisconsin driver's license and she was taken into custody for a criminal traffic offense. Officer Depies requested a K9 respond to the location of the stop and the K9 indicated positively on the Escape. A search of the Escape was conducted and Officer Depies located a white/clear rock like substance on the driver's seat that tested positive for cocaine. Officer Depies also located twisted receipts in the center console containing a tan rock-like substance and a white rock-like substance. The tan substance tested positive for fentanyl and the

white substance tested positive for cocaine. KRAEMER was arrested for Possession of Cocaine, Possession of Narcotics, and Possession of Drug Paraphernalia, as well as the traffic related offenses.

43. On May 21, 2025, case agents interviewed KRAEMER while she was in custody at the Ozaukee County Jail. KRAEMER informed case agents that she bought the narcotics that were located in her vehicle from an individual she refers to as, "D." KRAEMER stated she drove down to the City of Milwaukee for a few hours the day before in order purchase the narcotics. She stated "D" reached out to her and a silver car pulled up to her car. KRAEMER was boisterous and uncooperative during the interview and only gave limited information. She stated there were two black males in the vehicle and that she entered the silver car and sat in the back passenger seat. She believed she purchased two grams of heroin and two grams of crack for approximately $210-$220. KRAEMER insisted she did not have any further information and ended the interview. KRAEMER denied consent to go through her cell phone.

44. Case agents monitored KRAEMER'S jail phone calls during her incarceration at the Ozaukee County Jail. KRAEMER spoke to an individual over the phone about SMITH and made mention to DEA agents showing her a picture of him. KRAEMER stated his name several times throughout her many conversations.

45. On May 21, 2025, case agents installed a covert camera in the vicinity of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). The camera is directed towards the southeast corner of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**), focusing on the driveway to the south of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**).

46.     On May 24, 2025, case agents stopped receiving communications and location data from SMITH's telephone.  Case agents determined that SMITH took his telephone out of service for an unknown reason.

47.     On May 30, 2025, the Honorable Judge Joseph signed a Tracking Warrant authorizing the installation of a tracking device on the **Subject Vehicle**.  Case agents started receiving GPS locations of **Subject Vehicle** on June 11, 2025 after technical difficulties with the original GPS tracker.  Case agents monitoring **Subject Vehicle's** locations determined that SMITH was spending a lot of time in Watertown, Wisconsin following the install of the GPS tracker. Investigator Wilkens of Oshkosh Police Department advised that several of SMITH'S associates were the targets of an investigation through their department.  Investigator Wilkens and Lake Winnebago Area Metro (LWAM) Drug Unit conducted search warrants on several of SMITH'S known associates during the last week of May 2025.  Case agents believed that following the arrest of KRAEMER and the search warrants conducted by LWAM, SMITH was staying in Watertown to evade law enforcement attention.

48.     On June 23, 2025, case agents monitoring the GPS on **Subject Vehicle** learned that the **Subject Vehicle** was heading back towards the Milwaukee area from Watertown, Wisconsin. Case agents began monitoring the covert camera that was focused on the driveway of the 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). At approximately 10:50am, case agents monitoring the covert camera observe **Subject Vehicle** pull into the driveway at 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) and observe SMITH exit the **Subject Vehicle** and observed him enter 5281 South 13th Street, Milwaukee, Wisconsin (**Target location).** SMITH appeared to not use any keys to enter 5281 South 13th Street, Milwaukee, Wisconsin (**Target Location**). SMITH remains at the 5283 South 13th Street, Milwaukee, Wisconsin (**Target**

**Location**) throughout the day.  At approximately 4:07pm, case agents observe a vehicle pull into the driveway of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) bearing Wisconsin registration AHF1099, registered to a James NOEL (XX/XX/1980) out of Manitowoc, Wisconsin.  Case agents observe SMITH walk from the rear of the 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) (west side) and enter the passenger side of NOEL'S vehicle, leaving the door open. SMITH stayed in the vehicle for less than a minute, exited the vehicle, checked his surroundings, and then walked back inside of his 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). NOEL's vehicle backed out immediately after SMITH exited the vehicle.  Based on my training, experience, and investigation into SMITH, this shot contact with NOEL's vehicle is consistent with a drug transaction.

49.     At approximately 5:23pm, case agents observe another vehicle pull into the driveway of 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) bearing Wisconsin registration 357067F, registered to Joshua LANSER (XX/XX/1990) out of New Holstein, Wisconsin.  Case agents observe SMITH exit 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) again from the west side, enter LANSER'S vehicle for less than a minute, and then returned to 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**).  LANSER's vehicle then backed out immediately after SMITH exited the vehicle. Based on my training, experience, and investigation into SMITH, this shot contact with LANSER's vehicle is consistent with a drug transaction.

50.     On June 30, 2025, case agents conducted surveillance on SMITH's residence, 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**), after confirming **Subject Vehicle** was parked there.  At approximately 2:11pm, SMITH left 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) in **Subject Vehicle** and drove towards the north side of Milwaukee.

Case agents followed SMITH and confirmed that he stopped for less than five minutes near 5529 North 55th Street, Milwaukee, Wisconsin. SMITH did not make any other stops from the time he left 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) until he stopped on 55th Street. SMITH then left and drove directly to a bank on South 27th Street, Milwaukee, Wisconsin where he went through the drive-thru banking. SMITH then drove directly back to 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**), not making any other stops.

51.     Case agents began to monitor the covert camera on the residence. On June 20, 2025 at approximately 3:38pm, case agents observe a black Cadillac bearing Wisconsin license plate AHF1099 pull into 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**), the same vehicle observed on June 23, 2025. SMITH pulled into the driveway shortly after in **Subject Vehicle**. Case agents observed SMITH walk up and sit in the black Cadillac for a short moment before going inside 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) through the back door. Approximately five minutes later, SMITH comes back out and gets back into the passenger side of the black Cadillac. SMITH then exited the Cadillac and got into the **Subject Vehicle** to pull it out of the driveway so that the black Cadillac could leave. SMITH pulled back into the driveway and case agents follow the black Cadillac (AHF1099) away from 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**). Based on my training and experience, the short interaction between SMITH and the driver of the Cadillac is consistent with a street level drug deal.

52.     The Cadillac immediately departed the area once SMITH walked away after the short transaction. Case agents surveilled the Cadillac as it left the area and drove north away from Milwaukee and into Ozaukee County. Based on this information case agents contacted the Ozaukee County Sheriff's Office and alerted them to the Cadillac traveling northbound. The

Cadillac was ultimately traffic stopped for tint violations. It should be noted that as the Ozaukee County Deputy pulled behind the Cadillac, the Cadillac did not immediately pull over, but instead continued driving at normal speeds for a brief period before ultimately stopping for the deputy. A K-9 unit responded to the traffic stop and the K-9 alerted positively to the presence of narcotics inside the Cadillac. After a search of the Cadillac officers located approximately 5 grams of a tan or brown powder. The driver of the Cadillac, James NOEL (XX/XX/1980) was arrested and booked into the Ozaukee County Jail. NOEL declined to speak with case agents. The suspected fentanyl was subjected to a field test and yielded positive results for the presence of fentanyl.

53.     On July 1, 2025, case agents observed SMITH exit 5283 South 13th Street, Milwaukee, Wisconsin (**Target Location**) and enter into 5281 South 13th Street, Milwaukee, Wisconsin (**Target Location**) on a pole camera. SMITH appears to not use any key to enter 5281 South 13th Street, Milwaukee, Wisconsin (**Target Location**).

## TECHNICAL BACKGROUND

54.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the **Target Location, Subject Vehicle, and/or Dallas D. SMITH**, in whatever form they are found. One form in which the records might be found is data stored on a cellular telephone or computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

a)     *Probable cause.* I submit that if a computer, cellular telephone, or electronic storage medium is found at **Target Location, Subject Vehicle, and/or Dallas D. SMITH**, there is probable cause to believe records associated with the DTO's activities will be stored on the same, for at least the following reasons:

- Based on my knowledge, training, and experience, I know that this DTO frequently uses cellular telephones and social media applications to communicate.

- I also know, based on my knowledge, training, and experience, that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

- Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

- Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory

"swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

- Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

b) *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how such electronic devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **Target Location, Subject Vehicle, and/or Dallas D. SMITH** because:

- Data on the computer, cellular telephone, or storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.

Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified. As explained herein, information stored within a computer, cellular telephone, and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the

internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

- A person with appropriate familiarity with how a cellular telephone or computer works can, after examining this forensic evidence in its proper

context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

- The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone or computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a cellular telephone or computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

- I know that when an individual uses a cellular telephone or computer to operate a website that is used for illegal conduct, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The cellular telephone or computer is an instrumentality of the crime because it is used

as a means of committing the criminal offense. The cellular telephone or computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone or computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

c) *Necessity of seizing or copying entire computers, cellular telephones, or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of cellular telephone or computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following: (i) <u>The time required for an examination.</u> As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained

above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site; (ii) <u>Technical requirements.</u> Cellular telephone and computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge; and (iii) <u>Variety of forms of electronic media</u>. Records sought under this warrant could be stored in a variety of storage media formats that may require off- site reviewing with specialized forensic tools.

d) *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying cellular telephones, computers, and storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information

consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

e)  Because multiple people share the **Target Location** it is possible that the **Target Location** will contain cellular telephones, computers, or storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

f)  *Unlocking Apple brand devices*: I know based on my training and experience, as well as from information found in publicly available materials including those published by Apple, that Apple devices are used by many people in the United States, and that some models of Apple devices such as iPhones and iPads offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") or facial recognition in lieu of a numeric or alphanumeric passcode or password. These features are called Touch ID and Face ID, respectively. If a user enables Touch ID on a given Apple device, he or she can register up to 5 fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the

round button (often referred to as the "home" button) at the bottom center of the front of the device. In my training and experience, users of Apple devices that offer Touch ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device. In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made. If Touch ID enabled Apple devices are found during a search of the **Targe Location**, the passcode or password that would unlock such the devices are presently unknown to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user(s) of any Apple device(s) found during the search of the **Target Location 1**to the device's Touch ID sensor

in an attempt to unlock the device for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant Apple device(s) via Touch ID with the use of the fingerprints of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant. In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require Steven P. Lloyd to press his finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the **Target Location** in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID enabled Apple device via the

fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the Apple device(s) found in the **Target Location** as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked. Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of Dallas D. SMITH to the Touch ID sensor of the Apple brand device(s), such as an iPhone or iPad, found at the **Target Location** for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.

## CONCLUSION

55. Based on the foregoing, I believe there is probable cause to believe Dallas D. SMITH (XX/XX/1988) and other known and unknown individuals have and are committing violations of Title 21 United States Code Sections 841(a)(1), 843 and 846. I further believe there is probable to believe that located at and in the **Target Location, Subject Vehicle, and/or Dallas D. SMITH** further described in Attachment As, there is evidence of these crimes, all of which is detailed more specifically in Attachment B, that a warrant issue authorizing the search of the same.

# ATTACHMENT A1

## PLACE TO BE SEARCHED

5281/5283 South 13th Street, Milwaukee, Wisconsin to include its storage shield (**Target Location**). The address is a two-story residence with white brick siding on the lower half of the east side (front) of the residence, white siding on the upper half of the east side (front) of the residence and a black shingled roof. The numbers 5281 appear affixed in black to the north of the northern front door while the numbers 5283 appear affixed in black to the south of the southern front door on the east side of the residence. There is an awning above both of the front doors on the east side with a roof with black shingles. There are two large picture windows on either side of the front doors, both with three panes and a white trim. The address is a duplex, with 5281 is on the North side of the residence and 5283 is on the South side of the residence. 5283 and 5281 South 13th Street, Milwaukee, Wisconsin is utilized by Dallas D. Smith. The residence also has a white shed with black trim and black shingled roof in the backyard in the northwest corner of the yard.




## ATTACHMENT A2

## VEHICLE TO BE SEARCHED

2014 silver Nissan Altima with Wisconsin license plate 77159DS and vehicle identification number (VIN) 1N4AL3AP4EC136734 (**Subject Vehicle**)

## <u>ATTACHMENT A3</u>

## PERSON TO BE SEARCHED

The person of Dallas D. SMITH.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

All records, information, and items relating to violations of 21 U.S.C. §§ 841(a)(1), 843 and 846, between January 1, 2025, to present including:

a) Evidence of the crime described above
b) Paraphernalia and tools associated with drug trafficking, to include plastic bags, scales, duffel bags, and money counters;
c) Preparatory steps taken in furtherance of that crime;
d) Evidence of the existence, scope, or overt acts in furtherance of a conspiracy
e) Evidence of motive, intent, or knowledge of the crime described above;
f) Evidence of the location, whereabouts, and patterns of travel of Dallas D. SMITH;
g) Evidence about the appearance, clothing, and identity of Dallas D. SMITH;
h) All bank records, checks, credit card bills, account information, and other financial records;
i) Financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;
j) Lists of drug customers and related identifying information;
k) Types, amounts, and prices of drugs trafficked, as well as dated, places, and amounts of specific transactions;
l) Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
m) Indicia of residency;
n) Safes, vaults, or lock boxes used to store proceeds or records from these crimes;
o) U.S. Currency;
p) Evidence indicating how and when electronic devices were accessed or used, to determine the chronological and geographic context of access, use, and events relating to the crime under investigation; and
q) Cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/ or data.
r) Garage door openers—to be linked to the other potential stash-garages listed in the affidavit. Note: law enforcement is authorized to manipulate any recovered garage door openers to determine what location the garage door openers access. However, law enforcement will seek an additional warrant before searching any premises not covered by this application.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

During the execution of the search of the locations or person described in Attachments law enforcement personnel are authorized (1) to press the fingers (including thumbs) of Dallas D SMITH to the fingerprint sensor ("Touch ID") and (2) to present the face of Dallas D. SMITH to the facial recognition sensor, such as a camera, ("Face ID") of the device found at the Target Location for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

Note: The government will attempt to retrieve and copy all data from computers found at the location to be searched without physically removing said computers. If occupants of the premises are unwilling to cooperate with the agent(s) regarding the operation of an on-site computer system(s), and/or it appears that there is/are data security devices involved, or the computer system utilizes unusual or proprietary equipment, the computer system may be seized, along with the proprietary equipment. If the agent determines that the volume of material found on the premises is voluminous in size, and/or for any technical reason the agent(s) on the scene cannot search for or image/copy the information found on the premises, the computer system(s) and media may be seized.